# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

DESTINEY HANSEN,

       Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, AND PNC BANK**,**

       Defendants.

**Case No.:**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Destiny Hansen ("Plaintiff") by and through the undersigned counsel brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), (collectively "CRA Defendants"), and The PNC Bank ("PNC" or "Furnisher Defendant") (all collectively, the "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## **INTRODUCTION**

1. Plaintiff brings this action against the Defendants for violations of the FCRA, 15 U.S.C. § 1681, *et. seq.*

2. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow

instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

3. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the CRA Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

4. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

5. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

6. Since 1970, when Congress enacted the FCRA, 15 U.S.C. § 1681, *et seq.*, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

7.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

8.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having her life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin her reputation without cause, and make her unemployable or uninsurable, as well as deny her the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of her good name without her knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

9.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate or materially misleading and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that

3

consumer disputes are handled in a timely manner and that inaccurate or materially misleading information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from her or her credit and obtaining new credit.

10. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

11. The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, materially misleading, or unverifiable after said reinvestigation is completed.

12. Plaintiff's claims arise out of Experian, Equifax, Trans Union, and PNC's plainly deficient reinvestigations considering Plaintiff's disputes.

13. Accordingly, Plaintiff brings claims against Experian, Equifax, and Trans Union for: 1) failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b); and 2) failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate or materially misleading and for failing to delete or note

4

the disputed information from Plaintiffs credit file with a 100 word statement, in violation of the FCRA, 15 U.S.C. § 1681i.

14. Further, Plaintiff also brings claims against the Furnisher Defendant, for failing to conduct a reasonable investigation to determine whether information Plaintiff disputed was inaccurate or materially misleading for failing to delete the disputed information or modify the trade line on the Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

15. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the FCRA, 15 U.S.C. § 1681, *et seq.*, as described herein.

## JURISDICTION AND VENUE

16. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

18. Plaintiff is a natural person of East Troy, Wisconsin, and is a "consumer" as

5

that term is defined in 15 U.S.C. § 1681a(c).

19. Experian is a limited liability company with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Wisconsin, including within this District.

20. Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309, and is authorized to do business in the State of Wisconsin, including within this District.

21. Trans Union is a limited liability company with a principal place of business located at 555 W. Adams Street, Chicago, IL 60661, and is authorized to do business in the State of Wisconsin, including within this District.

22. The CRA Defendants are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Each CRA Defendant is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)) to third parties.

23. The information that the CRA Defendants collect, maintain, and sell includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. The CRA Defendants also collect consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

24. The CRA Defendants collect and maintain such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether

6

the CRA Defendants collect and maintain information about them. Not only that, but consumers cannot remove information that the CRA Defendants collect and maintain about them from the CRA Defendants databases. Further, the CRA Defendants sell that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that the CRA Defendants sell.

25.     Defendant, PNC Bank is a loan servicer with its principal place of business located at The Tower at PNC Plaza, 300 Fifth Avenue, Pittsburgh, PA 15222, who regularly transacts business within the state of Wisconsin. PNC is an entity which engages in the practice of furnishing consumer information to consumer reporting agencies, and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2(a) & (b), and other sections of the FCRA.  Further, PNC is a "person" as defined by FCRA 1681a(b).

26.     PNC is a "Furnisher" as defined in 12 CFR 1022.41. The Furnisher Defendant regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as PNC, is an entity that reports information about consumers to consumer reporting agencies, which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

### SUMMARY OF THE FAIR CREDIT REPORTING ACT

27.     The FCRA governs the conduct of consumer reporting agencies to preserve

7

the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

28. The FCRA was designed to protect consumers from the harmful effects of inaccurate and materially misleading information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

29. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

30. Congress also recognized that CRAs such as the Credit Bureau Defendants "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

31. The FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable

8

procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

32. Similarly, the FCRA also imposes a duty upon the Furnishers, such as the Furnisher Defendants, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2b).

33. The FCRA provides consumers with a private right of action against consumer reporting agencies, such as the CRA Defendants, and data furnishers such as the PNC, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

34. In or around April 2021, the Plaintiff and her husband (now ex-husband) purchased a home wherein they agreed to mortgage the property through PNC Bank.

35. In or around late 2024, early 2025, Plaintiff began the process to sell her house.

36. On March 31, 2025, Plaintiff closed on her home and paid PNC bank in full for the remaining mortgage.

37. Upon information and belief, the payment to pay the mortgage in full was mailed to PNC.

38. Upon information and belief, PNC received the payment.

9

39. The Plaintiff subsequently reviewed her credit reports from Experian, Trans Union, and Equifax and was shocked to see that the PNC mortgage was showing foreclosure on her home in April 2025, especially since she closed on the house in March 2025.

40. In or around October 2025, the Plaintiff disputed her credit reports with the credit reporting agencies

41. Plaintiff included with each dispute to the credit reporting agencies a copy of her license, personal identifications, relevant documents, and contact information for the title company.

42. In the October 2025 disputes to the credit reporting agencies, the Plaintiff included in her dispute letters a request to delete the foreclosure status on her credit report.

43. In her October 2025 disputes to the credit reporting agencies, the Plaintiff requested that if the credit reporting agencies did not delete the late payments, to include a 100-word statement in the credit reports detailing that if the payments were deemed late, they were only late because of the delay in mailing the payment to PNC.

44. The Plaintiff's October 2025 disputes with the CRA Defendants were sent via certified mail.

45. In support of her dispute, and to assist the CRA Defendants in identifying her in their system, Plaintiff provided her name, her date of birth, her full social security number, and her address.

46. Plaintiff requested that the foreclosure with PNC's information be deleted

from her credit file or modified to accurately represent the reason that the payments were not made (because the loan was closed in March 2025).

47. Plaintiff requested that the CRA Defendants reinvestigate the disputed information and correct their reporting.

## Trans Union's Dispute Reinvestigation

48. In or around October 2025, the Plaintiff mailed Trans Union a dispute letter via certified mail.

49. Upon information and belief, Trans Union received Plaintiff's dispute letter.

50. In or around November 2025, Trans Union sent Plaintiff a letter stating that the information on the Plaintiff's PNC mortgage was verified as accurate.

51. Upon information and belief, Trans Union has not updated their consumer report with the requested 100-word statement detailing the reason that PNC was reporting foreclosure.

52. Upon information and belief, Trans Union sent the Furnisher Defendant an ACDV pursuant to Plaintiff's October 2025 dispute to Trans Union.

53. Upon information and belief, the Furnisher Defendant received Trans Union's ACDV and did not adequately investigate Plaintiff's dispute.

54. In or around January 2026, Plaintiff pulled her credit reports and saw the foreclosure associated with the PNC mortgage is still appearing on the Plaintiff's Trans Union credit report.

55. Upon information and belief, Trans Union has not added the requested 100-

11

word statement detailing the reason that PNC was reporting foreclosure to their report.

56.     Trans Union failed to adequately review all of the information provided to it by Plaintiff.

57.     Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it.

### Experian's Unreasonable Dispute Reinvestigation

58.     In or around October 2025, the Plaintiff mailed Experian a dispute letter via certified mail.

59.     Upon information and belief, Experian received Plaintiff's dispute letter.

60.     In or around December 2025, Experian sent Plaintiff a letter stating that the information on the Plaintiff's PNC mortgage was verified as accurate.

61.     Upon information and belief, Experian has not updated their consumer report with the requested 100-word statement detailing the reason that PNC was reporting foreclosure.

62.     Upon information and belief, Experian sent the Furnisher Defendant an ACDV pursuant to Plaintiff's October 2025 dispute to Experian.

63.     Upon information and belief, the Furnisher Defendant received Experian's ACDV and did not adequately investigate Plaintiff's dispute.

64.     In or around January 2026, Plaintiff pulled her credit reports and saw the foreclosure associated with the PNC mortgage is still appearing on the Plaintiff's Experian

12

credit report.

65. Upon information and belief, Experian has not added the requested 100-word statement detailing the reason that PNC was reporting foreclosure to their report.

66. Experian failed to adequately review all of the information provided to it by Plaintiff.

67. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it.

**Equifax's Unreasonable Dispute Reinvestigation**

68. In or around October 2025, the Plaintiff mailed Equifax a dispute letter via certified mail.

69. Upon information and belief, Equifax received Plaintiff's dispute letter.

70. In or around December 2025, Equifax sent Plaintiff a letter stating that the information on the Plaintiff's PNC mortgage was verified as accurate.

71. Upon information and belief, Equifax has not updated their consumer report with the requested 100-word statement detailing the reason that PNC was reporting foreclosure.

72. Upon information and belief, Equifax sent the Furnisher Defendant an ACDV pursuant to Plaintiff's October 2025 dispute to Equifax.

73. Upon information and belief, the Furnisher Defendant received Equifax's ACDV and did not adequately investigate Plaintiff's dispute.

74. In or around January 2026, Plaintiff pulled her credit reports and saw the foreclosure associated with the PNC mortgage is still appearing on the Plaintiff's Equifax credit report.

75. Upon information and belief, Equifax has not added the requested 100-word statement detailing the reason that PNC was reporting foreclosure to their report

76. Equifax failed to adequately review all of the information provided to it by Plaintiff.

77. Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it.

**The CRA Defendants' Method for Considering Consumer Credit Report Disputes**

78. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

79. The credit bureaus, Equifax, Experian, Trans Union, and non-party Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

80. That lexicon or unique language is commonly referred to in the credit

reporting industry as "Metro II."

81. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

82. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

83. Metro II codes are used on an industry wide form known within the credit industry as an ACDV electronic form.

84. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

85. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

86. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit information disputed by a consumer.

87. The data furnishers, like the Furnisher Defendants, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit information and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit mortgage information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

15

88. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed information was verified as accurate and belonging to the disputing consumer, updating information related to the mortgage, or deleting the mortgage entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**The Furnisher Defendants' Unreasonable Dispute Investigations**

89. Upon information and belief, the Furnisher Defendant PNC failed to adequately review all of the information provided to them by Plaintiff's dispute letters sent to the CRA Defendants.

90. Upon information and belief, the Furnisher Defendant PNC verified the disputed foreclosure as accurate in response to Equifax, Experian, and Trans Union's ACDVs.

91. Furnisher Defendant PNC violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Inquiries were the product of identity theft.

**Plaintiff Sustained Damages as a Result of the Defendants' Conduct**

92. Plaintiff did exactly what she should have done upon realizing she was the victim of false reporting

93. Plaintiff disputed with the CRA Defendants.

94. Plaintiff incorporated the closing documents from the closing to verify that

the closing took place on March 31, 2025.

95.     Plaintiff included information for a contact person at Metropolitan Escrow, Inc. in her dispute letters.

96.     Upon information and belief, none of the Defendants ever contacted Metropolitan Escrow Inc. to verify information related to the closing.

97.     Despite Plaintiff's disputes of the inaccurate and/or misleading PNC mortgage, Experian Equifax, and Trans Union hardly waivered in their refusal to block or change the reporting of the mortgage.

98.     Upon information and belief, Experian, Equifax, and Trans Union continue to report the inaccurate and/or misleading PNC mortgage on Plaintiff's credit reports.

99.     As a result of the Defendants' conduct, Plaintiff sustained severe emotional distress. Specifically, Plaintiff has spent an inordinate amount of time dealing with the stress and anxiety caused by the false reporting from the Defendants.

100.    Plaintiff suffered from countless nights of poor sleep, no sleep, or interrupted sleep as her mind frequently drifts to thoughts of the issues with her credit report, future issues caused by Defendants, and/or other related matters.

101.    Plaintiff reasonably believes that the Furnisher Defendant PNC failed to conduct reasonable investigations with her disputes, failed to have the disputed incorrect or materially misleading Mortgage removed or modified from Plaintiff's Experian, Equifax, and Trans Union credit files, and in fact, verified the mortgage as accurate to Defendant Equifax, Experian, and Trans Union and in so doing inaccurately suggested that Plaintiff

17

was responsible for a delay in a mailed payment.

102. Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which she incurred attorney's fees.

103. Defendants' conduct disrupted Plaintiff's life.

104. In addition to impacting her work productivity and income, dealing with the consequences of Defendants' conduct has taken Plaintiff away from time she would otherwise have spent with her friends and family. Plaintiff has reasonably lost countless hours suffering and worrying over whether someone would seek to collect the outstanding balances on the incorrect and/or misleading mortgage from her.

105. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes. Further, Plaintiff reasonably believes that the PNC mortgage have negatively impacted and depressed her credit score.

106. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

107. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless,

grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

108. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time she receives another communication from Defendants. Her ongoing stress and anxiety regarding the situation has affected her and her relationships negatively.

109. As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the data furnishers, despite numerous court decisions admonishing this practice. See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

110. The Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Defendants' violations of the FCRA are willful.

19

111. The Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

112. As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the mortgage, the expenditure of labor and effort disputing and trying to remove the mortgage.

113. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of false reporting whose veracity is doubted, questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(Equifax, Experian, and Trans Union Only)**

114. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

115. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible

20

accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

116. On numerous occasions, Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

117. Further, Plaintiff suffered adverse action from potential creditors.

118. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

119. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

120. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

121. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Equifax, Experian, and Trans Union.

122. Equifax, Experian, and Trans Union's conduct, actions, and inactions were

willful, rendering Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

123. Plaintiff is entitled to recover attorneys' fees and costs from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Equifax, Experian, and Trans Union Only)

124. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

125. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

126. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

127. The Plaintiff disputed the inaccurate information with the CRA Defendants

and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the way that the mortgage was reporting.

128. Plaintiff disputed the information with the Equifax, Experian, and Trans Union to no avail.

129. In response to the Plaintiff's disputes, Equifax, Experian, and Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

130. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

131. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

132. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

133. As a result of Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the inaccurate and/or materially misleading mortgage information; and, the expenditure of labor and effort disputing and trying to remove incorrect and/or materially misleading information.

134. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Equifax, Experian and Trans Union.

135. Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15

24

U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

136. Plaintiff is entitled to recover attorneys' fees and costs from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(PNC Only)**

137. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

138. The Furnisher Defendant PNC caused the incorrect and/or materially misleading Mortgage to be added to Plaintiff's credit file with the national credit bureaus, including but not limited to the CRA Defendants.

139. Defendant PNC violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants.

140. As a result of the Furnisher Defendant PNC's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the incorrect and/or materially misleading mortgage; and, the expenditure of labor and effort disputing and trying to remove the incorrect and/or materially misleading mortgage.

141. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Furnisher Defendant.

142. Furnisher Defendant PNC's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Furnisher Defendant PNC was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

143. Plaintiff is entitled to recover attorneys' fees and costs from Furnisher Defendant PNC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **<u>PRAYER FOR RELIEF</u>**

(a) WHEREFORE, Plaintiff respectfully requests that this Honorable Court

26

grant the following relief against Defendants: Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

*(b)*   An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, *et seq.;*

(c)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 21st day of May, 2026.

By: */s/ Matthew McKenna*
Matthew McKenna
WI Bar Number 1136439
Shield Law
237 South St. Unit 110
Waukesha, WI 53186
T: (262) 420-5953
E: matt@shieldlaw.com

*Attorney for Plaintiff,*
*Destiney Hansen*

27